UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEURE RODRIGUEZ, on behalf of himself, and others similarly situated,<br><br>                              Plaintiff,<br><br>         -against-<br><br>LULAV PROPERTIES, LLC, LULAV MANAGEMENT CORP., and KOUROSH NASAB a/k/a KENNY NASAB a/k/a KEN NASAB,<br><br>                              Defendants, | Civil Action No.:<br><br>**FLSA COLLECTIVE AND RULES 23 CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, Geure Rodriguez ("Mr. Rodriguez" or "Plaintiff"), on behalf of himself, and others similarly situated, by and through his attorneys, Valiant Law, hereby complains about Defendants Lulav Properties LLC, Lulav Management Corp. (together, "Lulav"), and Kourosh Nasab a/k/a Kenny Nasab a/k/a Ken Nasab ("Nasab"), (all defendants collectively, "Defendants") and alleges, as follows:

## **INTRODUCTION**

1.      Defendant Ken Nasab owns and manages more than 882 apartments in several buildings throughout New York City[1] (the "Nasab Buildings").

2.      Sadly, Defendants' lucrative real estate enterprise was built at the expense of hard-working employees, such as superintendents, porters, janitors, handymen and other workers at Nasab's buildings, who were paid below minimum wage, denied overtime compensation.

3.      Plaintiff was a hardworking employee of Defendants, who faithfully served as a live-in maintenance and repair worker for years.  Meanwhile, Plaintiff was forced to live in an uninhabitable, windowless room in the basement, with no sink and full of hazardous lead paint.

---

[1]      *See* https://www.nyc.gov/office-of-the-mayor/news/558-23/mayor-adams-successful-enforcement-action-against-four-landlords-protect-children-from.

4.    Although Plaintiff worked more than seventy-five hours (75) per week, Defendants egregiously paid him **only $100.00 per week**, in clear disregard of the law.

5.    Plaintiff, on behalf of himself, and others similarly situated, alleges, pursuant to the New York Labor Law ("NYLL"), he is entitled to recover from the Defendants: (1) unpaid wages, overtime compensation, "spread of hours," and illegal deductions; (2) liquidated damages and statutory penalties pursuant to the New York Wage Theft Prevention Act; (3) pre-judgment and post-judgment interest; and, (4) attorneys' fees and costs.

6.    Plaintiff, on behalf of himself, and others similarly situated, further alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), he is entitled to recover from the Defendants: (1) unpaid wages and overtime compensation; (2) liquidated damages; (3) pre-judgment and post-judgment interest; and, (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, for Plaintiff's claims arising under the laws of the United States and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants reside within the jurisdiction of this District, and/or Defendants have sufficient contacts with this District to subject them to personal jurisdiction at the time this action is commenced, and because a substantial part of the events and/or omissions giving rise to this action, occurred in this district.

## PARTIES

9.     Plaintiff is an adult, who, at all relevant times, is a resident of Bronx County, State of New York.  Plaintiff began his employment with Defendants as a maintenance and repair worker in 2021 and worked continuously for Defendants until January 28, 2025.  Throughout his tenure, Plaintiff worked mostly two buildings, managed, controlled, owned and operated by Defendants, which were located at 916 and 918 Faile Street, Bronx, New York 10474 (the "Buildings"), which are and were one of the Nasab Buildings as alleged below.

10.     Upon information and belief, at all relevant times, Defendants, were, and are, a centrally managed real estate enterprise operating under Defendant Nasab's ownership, management, supervision, direction and control, which owns, controls, maintains, manages, purchases, and leases apartment buildings in New York City (the "Nasab Enterprise"), including, but not limited to, the buildings located at: 916 Faile Street, Bronx, New York ; 918 Faile Street, Bronx, New York; 1840 Phelan Place, Bronx, New York; 261 East Burnside Avenue, Bronx, New York; 1175 Vyse Avenue, Bronx, New York; l748 Monroe Avenue, Bronx, New York; 1520 Grand Concourse, Bronx, New York, 361 East 188th Street, Bronx, New York; 3460 Baily Avenue, Bronx, New York; 2058 Haviland Avenue, Bronx, New York; 1235 Bradford Avenue, Bronx, New York; 1249 Webster Avenue, Bronx, New York; 1115 College Avenue, Bronx, New York; 185 East 159th Street, Bronx, New York; 1070 Ogden Avenue, Bronx, New York; 724 East 160th Street, Bronx, New York; 938 Intervale Avenue, Bronx, New York; 1826 Monroe Avenue, Bronx, New York; 37 Featherbed Lane, Bronx, New York; 405 East 182nd Street, Bronx, New York; 2330 Tiebout Avenue, Bronx, New York; 2031 Ryer Avenue, Bronx, New York; 2073 Davidson Avenue, Bronx, New York, 28 West 182nd Street, Bronx, New York; 2170 Davidson Avenue, Bronx, New York; 2234 Davidson Avenue, Bronx, New York; 2451 Davidson Avenue, Bronx,

New York; 2243 Grand Avenue, Bronx, New York; 2418 University Avenue, Bronx, New York; 2734 Sedgwick Avenue, Bronx, New York; 2849 Webb Avenue, Bronx, New York; 2068 Story Avenue, Bronx, New York; 1253 Leland Avenue, Bronx, New York; 519 West 147th Street, New York, New York; 519 West 147th Street, New York, New York; 515 West 147th Street, New York, New York; 511 West 147th Street, New York, New York; and 611 Academy Street, New York, New York  (the "Nasab Buildings").

11.     Upon information and belief, at all relevant times, Defendant Kourosh Nasab a/k/a Kenny Nasab a/k/a Ken Nasab, is an individual who resides in the State of New York and has a place of business in Bronx County, New York.

12.     Upon information and belief, Nasab is a principal, owner, officer, managing member, member, member with authority to act, director, officer, shareholder and/or controlling shareholder of the Nasab Enterprise, the entity Defendants, and other holding entities for the Nasab Buildings, which are part of the Nasab Enterprise, including, but not limited to, Lulav Properties, LLC, Lulav Management Corp., Kotel Properties LLC, 1840-1850 Phelan LLC, Three Thousand LLC, Holdy Land Management LLC, BX234 LLC, BCBG Management LLC, 2418 LLC, Judah Management LLC, Evanco Holdings LLC, Azriel Management LLC, Kodesh Management LLC, Kingsbridge Group LLC, K&A Management LLC, Eitan Management LLC, Tiffy Management LLC, Eliyah Management LLC, Magen David Management LLC, 1253 Leland Equities LLC, IDF Management LLC, Pasto Realty LLC, BH 26 Management LLC, Narino Realty LLC, NYS Management LLC, Casanova Realty LLC, Grote Management LLC and Vyse Realty LLC, and other holding entities for the Nasab Buildings (each a "Holding Entity" and together, "Holding Entities"), and had supervisory authority over Plaintiff and those similarly situated.

13.     Upon information and belief, Nasab is the owner, head officer, site manager, property manager, managing agent, and/or landlord for the Buildings and the Nasab Buildings, and has the right to sell, rent or lease and/or approve the sale, rental or lease of housing units in the Nasab Buildings.

14.     Upon information and belief, the Nasab Enterprise and Defendants are responsible for handling the renovations, rentals, leases, repairs, maintenance and other work in the Nasab Buildings, as well as the hiring, firing, scheduling, supervising and payment of wages to employees and individuals performing such work at the Nasab Buildings.

15.     Upon information and belief, Defendant Lulav Properties LLC, is a New York domestic limited liability company, with a principal place of business at 40 Pool Drive, Roslyn, New York 11576.  Upon information and belief, Lulav Properties LLC was a Holding Entity and was the owner, operator, managing agent and/or property manager for the Buildings and the Nasab Buildings.  Upon information and belief, Lulav Properties LLC has the right to sell, rent or lease or approve the sale, rental or lease of housing units of buildings located in New York City which are owned by the Defendants, including the Buildings and the Nasab Buildings.

16.     Upon information and belief, Lulav Properties LLC is responsible for handling the renovations, rentals, repairs, maintenance, leases, improvements, remediation  of code violations, and other work in all the buildings, as well as the hiring, firing, scheduling, supervising and payment of wages to employees and individuals performing such work at the Buildings and the Nasab Buildings.

17.     Upon information and belief, Defendant Lulav Management Corp., is a New York domestic limited liability company, with a principal place of business at 15 Cutter Mill Rd., Ste 186, Great Neck, New York 11021.  Upon information and belief, Lulav Management Corp. was

a Holding Entity and the owner, operator, managing agent and/or property manager for the buildings and properties which are the subject of this complaint, including but not limited to the Buildings and the Nasab Buildings. Lulav Management Corp. has the right to sell, rent or lease and/or approve the sale, rental or lease of housing units of buildings located in New York City which are owned by the Defendants, including the Buildings and the Nasab Buildings.

18.    Upon information and belief, Lulav Management Corp. is responsible for handling the renovations, rentals, repairs, maintenance, leases, improvements, remediation of code violations, and other work in all the buildings, as well as the hiring, firing, scheduling, supervising and payment of wages to employees and individuals performing such work at the buildings.

19.    Upon information and belief, at all relevant times, Nasab was, and continues to be, the owner, operator, manager, principle, sole member, member, member with authority to act, director, officer, shareholder, controlling shareholder and/or senior executive in the entities which comprise the Nasab Enterprise, and through which Nasab and the Nasab Enterprise invests in, owns, operates, manages, maintains and controls the Nasab Buildings, and also the owner, principle, member, managing member, director, officer, shareholder, controlling shareholder and/or senior executive of the Holding Entities that nominally hold title to the Nasab Buildings.

20.    Upon information and belief, Nasab has managerial, supervisory and operational control over the Holding Entities and the Nasab Enterprise, and it's financial affairs and personnel policies, including, but not limited to, matters and policies pertaining to work schedules, wage practices and compensation of Nasab Enterprise's and Defendants' employees and workers, as well as their schedules, rates of pay, salary and overtime policies.

21.     Upon information and belief, Nasab monitored and directed Plaintiff's and other similarly situated employees' work performance by, *inter alia*, regularly overseeing business operations and meeting with superintendents and other maintenance and manual workers.

22.     Upon information and belief, Nasab is an employer under the FLSA and NYLL, and is liable for the wages of Plaintiff and those similarly situated under New York Business Corporation Law § 630 and New York Limited Liability Company Law § 609(c).

23.     Upon information and belief, and at all times relevant, the Nasab Enterprise was controlled by individual Defendant Ken Nasab who, along with the Defendant entities and Nasab Enterprise, had the status of joint employer of superintendents, porters, janitors handymen, and other manual workers who performed worked at the Nasab Buildings during the applicable FLSA and NYLL statute of limitations periods.

24.     At all relevant times, the Nasab Enterprise had a principal place of business in Bronx County, New York, from which it owned, operated and managed the Nasab Buildings under the same policies regarding the payment of wages to building employees.

25.     Upon information and belief, title to each of the Nasab Buildings is nominally vested in an entity and/or limited liability company, each of which is wholly owned and controlled by the Nasab and the Nasab Enterprise, and each having Nasab and/or Nasab's agent as a principal and/or authorized signatory.

26.     The Defendants and Nasab Enterprise has applied common employment practices, policies and procedures to superintendents, porters, janitors, handymen, maintenance and other manual workers of the Nasab Buildings, including, *inter alia*, the unlawful practice of willfully refusing to compensate these employees for all hours worked, paying below minimum wage, failing to pay the overtime premium for hours worked beyond the first forty (40) hours of work

per week, requiring them to be on call 24/7 without proper compensation, as well as failing to pay the spread of hours premium.

27.     Furthermore, the Nasab Enterprise had a policy and practice of requiring unlawful deductions from wages, including the Nasab Enterprise's requirement that superintendents, porters, janitors and other workers use their own money to pay for work-related expenses such as tools, dust pans, mops, garbage cans and bags, and cleaning supplies, used solely for the benefit of the Defendants and the Nasab Enterprise, without being reimbursed, as well as phones, in violation of NYLL § 193 and 12 N.Y.C.R.R. § 141-1.9.

28.     Nasab, the Nasab Enterprise, Lulav Properties, LLC and Lulav Management, as well as all other Holding Entities holding title to the Nasab Buildings, all operated as a centrally managed real estate enterprise, under common direction and control and were a joint enterprise and joint employer of Plaintiff and others similarly situated.  With respect to personnel and employment policies, the Nasab Enterprise would carry out its practices and policies through its managerial personnel, including Nasab, property managers, supervisors, and other managing agents, each of whom exercised direct oversight over the Nasab Enterprise's superintendents, janitors, porters and other personnel and employees who worked at the Nasab Buildings.

29.     Defendants oversaw and had control over Defendants' policies and procedures with respect to their unlawful policies, acts and practices alleged herein, including but not limited to, payroll, timekeeping, scheduling, and otherwise running the business.  The Defendants share a common commercial business purpose, addresses and locations.

30.     Although Defendants may be separate and distinct business entities and individuals, they engage in related activities.  Defendants shared Plaintiff, as well as other employees, acted in the interest of each other with respect to employees, paid their employees by the same method,

shared control over their employees, hired and fired employees, administered disciplinary procedures, used the same Human Resources employees, supervised employees, maintained payroll, provided insurance, controlled the terms and conditions of employees' employment, employed the individuals who committed the unlawful acts alleged herein, and are themselves under common control and management.

31.   Upon information and belief, the corporations and/or entities are owned, operated, and controlled by the same owner, or owner group, operating as a unified operation and, upon information and belief, each provides mutually supportive services to the substantial advantage of the other, such that each entity may be treated as agents of each other, independent contractors, subcontractors, a single enterprise and/or joint employers.

32.   Upon information and belief, at all times relevant, Defendants and the Nasab Enterprise were Plaintiff's employers.  Further, at all times relevant, they were and now are related to or form an organization, the entities' holding, parent, sister and/or subsidiary corporation and/or alter egos of each other, the Nasab Enterprise and Nasab.  Further, upon information and belief, some, or all of the Defendants' entities and Holding Entities are mere shell and sham entities without capital or assets and were conceived, intended and were used by Nasab and the Nasab Enterprise and the entities as a device to avoid liability and for the purposes of substituting a financially insolvent corporation, entity or related subsidiary or parent company.

33.   Upon information and belief, the Defendants' entities, at all relevant times, were the alter egos of each other, the Nasab Enterprise and Nasab, and there exists, and at all relevant times has existed, a unity of ownership between the Defendants such that any separateness has ceased to exist in that the entities, owners, members, and the Nasab and Nasab Enterprise used and continue to use, comingle, or restrict the assets for their own use, without adequate consideration

and have withdrawn funds from these entities for its parent organizations and Nasab's use and/or collusion, and at all times herein mentioned were, controlled, dominated, and operated by Defendants entities, their owners and Nasab, as their individual business and alter ego, in that the activities and business of Defendants were and are carried out without the holding of proper directors or shareholders meetings, comingled funds and accounts, improper insurance, no records or minutes of any material corporate proceedings were maintained, and Defendants entered into misrepresented and sham transactions.

34.     Upon information and belief, at all times relevant to the allegations in this Complaint, Defendants and the Nasab Enterprise have been, and continue to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

35.     At all relevant times, the work performed by Plaintiff and those similarly situated was directly essential to the business operated by Defendants and the Nasab Enterprise, and Plaintiff handled goods including but not limited to, cleaning supplies, tools, plumbing supplies, garbage supplies, fixtures, appliances, windows, paint, plaster and other materials that were produced and/or transported through interstate commerce for performance of his work duties for Defendants.

36.     At all relevant times, Defendants and the Nasab Enterprise were Plaintiff's and those similarly situated employees', employers within the meaning of the FLSA and the NYLL, and Plaintiff was and is a covered employee within the meaning of the FLSA and NYLL.

37.     At all relevant times, Defendants and the Nasab Enterprise knowingly and willfully failed to pay Plaintiff and those similarly situated, lawfully earned wages, in contravention of the FLSA and NYLL.  For example, Defendants have been sued for virtually identical violations in the past, but purposefully, knowingly, intentionally and/or recklessly refuse to correct these unlawful practices and intentionally continue to violate the law, despite actual notice of these violations.

38.     At all relevant times, Defendants and the Nasab Enterprise knowingly and willfully operated and operates its business with a policy and practice of not paying Plaintiff and other similarly situated employees the FLSA overtime rate (of time and one-half) and the New York State overtime rate (of time and one-half), in violation of the FLSA and NYLL and supporting federal and New York State Department of Labor Regulations.

39.     At all relevant times, Defendants and the Nasab Enterprise knowingly and willfully operated and operates its business with a policy of not paying Plaintiff and other similarly situated manual employees weekly, in violation of the New York Labor Law and the supporting New York State Department of Labor Regulations.

40.     At all relevant times, Defendants and the Nasab Enterprise knowingly and willfully failed to pay Plaintiff and those similarly situated lawfully earned overtime wages in contravention of the FLSA and NYLL.  Defendants and the Nasab Enterprise knowingly and willfully failed to pay Plaintiff for all hours worked and lawfully earned "spread of hours" premiums in contravention of the NYLL.

## STATEMENT OF FACTS

### *Plaintiff's Employment with Defendants*

41.     Plaintiff began working for Defendants in 2021 and served as porter, repair worker, maintenance worker, handyman and/or janitor for Defendants and the Nasab Enterprise.  Plaintiff worked continuously from March 2019 through January 2025, without interruption.

42.     Plaintiff was required to live in the Defendants' Building, in an illegal, uninhabitable, windowless and hazardous basement room, which Plaintiff was required to work on and repair at his own expense without compensation. For example, he had to remove construction debris and materials, as well as clean, in order to properly move into the "apartment," because previously it was being used as a storage closet (because it is not a room, much less a habitable New York City apartment).

43.     The Buildings are approximately 100 years old and, at all relevant times, had at least 72 residential units, and required an inordinate amount of upkeep, were rampant with code violations, safety issues, tenant complaints and other issues.  As such, Plaintiff was constantly working, and Defendants required him to be on call twenty-four (24) hours per day, seven (7) days per week.

44.     Plaintiff's duties included not only maintenance, but substantial duties outside the scope of traditional janitorial services.  Plaintiff was responsible for, and spent a substantial amount of his work hours, performing major repairs in the common areas and residential units, renovations,  replacing/installing plumbing and fixtures, carpentry, cabinetry, flooring, installing appliances, boiler work, and emergency repairs for tenants and the Buildings, and other "handy man" work (these duties collectively referred to as "Non-Janitorial Work").  Under the NYLL,

such "Non-Janitorial Work" is not traditional janitorial or superintendent duties and thus falls outside any "exemption" under the law.

45. Additionally, Plaintiff's duties included sorting and removing the garbage and recycling, sweeping, mopping, cleaning, shoveling snow and taking care of the building grounds, assisting with tenants' problems, and other tasks.

46. Further, Plaintiff was required to be on call 24 hours per day and 7 days per week, and was responsible to work on evenings, nights, overnight, and weekends, to perform his job duties, handle tenant emergencies, repairs, take out trash during the evenings, snow removal at all hours and providing assistance to tenants if they were locked out or otherwise had any issues.

### *Plaintiff Was Paid Well Below Minimum Wage with No Overtime Premium*

47. During Plaintiff's tenure, Defendants failed to pay him properly. Upon information and belief, Defendants' unlawful pay practices affected not only Plaintiff, but at least one hundred (100) other building superintendents, janitors, porters, handymen, workers, and the like employed by Defendants and the Nasab Enterprise.

48. Most weeks, Plaintiff worked eighty (80) to eighty-four (84) hours per week or more. Plaintiff would typically work Monday through Sunday from approximately 6:00 a.m. to 6:00 p.m. or 8:00 p.m., but he was required to work on the evenings, weekends, nights and for other "emergencies" or when otherwise instructed by Defendants.

49. Plaintiff was a non-exempt hourly manual worker. However, throughout his employment, he was paid the same amount every week, a flat rate of **just one hundred dollars ($100.00).** Thus, he was paid below minimum wage, and not properly compensated at the overtime rate when he worked more than forty (40) hours in any given week.

50.    Egregiously, this amounts to **nearly one dollar per hour ($1.19)** for the work Plaintiff performed.  Defendants failed to pay Plaintiff the overtime premium for any hours work over 40 hours per week.

51.    From 2018 through 2023, the minimum wage Defendants were required to pay Plaintiff was $15.00 per hour.  In 2024, the lawful minimum wage increased to $16.00 per hour. As such, Defendants also paid Plaintiff below the applicable statutory minimum wages.

52.    Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half) for work performed over forty (40) hours in a work week, as well as paying Plaintiff, and those similarly situated, below the lawful minimum wage, as well as other violations alleged herein.

### *Plaintiff and the Class were Not Properly Paid for On-Call Time*

53.    In addition, Defendants also failed to compensate Plaintiff for time he spent "on-call." Plaintiff was required to be "on-call" 24 hours per day, 7 days per week, was not permitted travel away from the Buildings to a distance that would not allow a prompt response to any "emergencies," and thus was required and engaged by Defendants to wait without compensation.

54.    Defendants required Plaintiff to maintain a cell phone so that he was in ready communication with Defendants, their managing agents, and/or residents should Plaintiff need to work at any time.

55.    Consequently, Plaintiff regularly responded to numerous tenants who lived in the buildings he serviced.  As a result of the Buildings' condition, Plaintiff regularly responded to repair and service calls, whether it be a leaky faucet, crumbling plaster or anything else needed. Plaintiff frequently had to attend such "service calls" on the weekends, evenings or late at night.

56.    Plaintiff was so burdened with these calls outside of his normal working hours that he was not permitted to engage in personal endeavors, including travel, as Defendants required Plaintiff to remain at or near his building to respond to a service call on a moment's notice.

57.    Despite being so burdened with obligations to his Defendants, Plaintiff was not compensated for his on-call time, nor was he compensated for all work actually performed.

### ***Defendants were One Enterprise and Constituted Joint Employers***

58.    Defendants, collectively and as the Nasab Enterprise, had the power to hire and fire Plaintiff and those similarly situated, supervised and controlled their work, schedules and conditions of employment, determined the rate and method of pay and maintained employment records. Defendants operated as one enterprise and performed related activities through: (i) unified operation; (ii) common control by Nasab and other individuals; (iii) for a common business purpose as alleged herein.

59.    Specifically, upon information and belief, the constituent individuals and entities of Nasab Enterprise functioned as a unified enterprise through ultimate control of Nasab Buildings exercised by Nasab, and though the Nasab Buildings may be titled in different entity names, Nasab has substantial ownership interests in the entities that nominally hold title to the Nasab Buildings.

60.    Further, the Nasab Buildings are centrally managed and the Nasab Enterprise is known for and has publicized its status as a real estate business that focuses primarily on multiple family apartment buildings, and the Nasab Enterprise issues uniform personnel policies and directives to its janitors, porters, maintenance, repair, and other manual working personnel, either through its managing agents, supervisors or other managerial personnel.

61.    Upon information and belief, through their integrated ownership and management structure, all the Defendants have an economic interest in the Building and the Nasab Buildings,

and Defendants run the business of all the Nasab Enterprise as one operation, and Defendants' operations were interrelated and united.

62.    Defendants each had either functional and/or formal control over terms and conditions of the work, and over the policies and practices with respect to the employment and compensation of the Plaintiff, the Collective and the Class.

63.    Defendants employ or employed Plaintiff and the Class and the Collective and are or were their employers within the meaning of the FLSA and NYLL.

64.    Consistent with their policies and patterns or practices, Defendants harmed Plaintiff, and the Class and Collective Members as alleged herein.

65.    As described herein, Defendants have, for years, knowingly failed to adequately compensate Plaintiff and the Class and Collective Members (as defined below), including compensation and overtime wages due, under the FLSA and NYLL (Article 19), and thus unlawfully deducted sums from wages by requiring employees to pay for their own tools and supplies without reimbursement, in violation of NYLL § 190, et seq., NYLL § 650, et seq., New York Department of Labor Regulations, 12 N.Y.C.R.R. 142 and 12 N.Y.C.R.R. § 2.10(a), amongst other violations as alleged herein.

## COLLECTIVE ACTION ALLEGATIONS

66.    Plaintiff brings this action individually and as representative on behalf of all other current and former non-exempt employees who worked for Defendants and/or at the Nasab Buildings, such as superintendents, janitors, porters, handymen, maintenance and other manual workers, who have been or were employed by the Defendants since May 2022 to the entry of judgment in this case (the "Collective Action Period"), and who were compensated less than the

statutory minimum wage rate and/or less than the rate of time and one-half for all hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

67.    The Collective Action Members are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are at least 100 Collective Action Members who worked during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims.  Therefore, Plaintiff submits that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

68.    Plaintiff will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the field of conflict with those members of this collective action.

69.    This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

70.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members

of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

71.    Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and facts common to Plaintiff and other Collective Action Members are:

i.    Whether the Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA;

ii.    Whether the Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiff and the Collective Action Members;

iii.    What proof of hours worked is sufficient where the employer fails in its duty to maintain wage and hour records;

iv.    Whether the Defendants failed to pay Plaintiff and the Collective Action Members statutory minimum wages for some hours worked, in violation of the FLSA and the regulations promulgated thereunder;

v.    Whether the Defendants failed to pay Plaintiff and the Collective Action Members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

vi.    Whether the Defendant's violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

vii.   Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs and disbursements, and attorneys' fees.

72.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

73.    Plaintiff and others similarly situated have been substantially damaged by the Defendant's wrongful conduct.

## CLASS ACTION ALLEGATIONS

74.    Plaintiff brings this action on his own behalf and on behalf of a class of persons under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

75.    Plaintiff brings his New York Labor Law claims on behalf of himself and all persons who were employed by Defendants at any time since May 2019 (the "Class Period") who worked for Defendants and/or at the Nasab Buildings, such as superintendents, janitors, porters, handymen, maintenance and other manual workers who were non-exempt hourly employees within the meaning of the New York Labor Law and have not been paid proper minimum wage, for hours worked and/or overtime compensation in violation of the New York Labor Law (the "Class").

76.    The persons in the Class identified herein are so numerous that joinder of all members is impracticable. Although the identity and precise number of such persons is unknown, and the facts upon which the calculation of that number may be ascertained are presently within the sole control of the Defendants, upon information and belief, the Class contains more than 300 members and the Class consists of all hourly employees who have not previously brought independent claims and is so numerous that joinder is impracticable and most of whom would not

be likely to file individual suits because they lack financial resources, access to attorneys, or knowledge of their claims.

77.    The claims of Plaintiff are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individuals lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

78.    Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

79.    Plaintiff has committed himself to pursuing this action and has retained counsel experienced in employment law and class action litigation.

80.    Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff understands that, as class representative, he assumes a fiduciary responsibility to the Class members to represent their interests fairly and adequately, and that he must consider the interests of the Class members just as they would represent and consider their own interests, and that they may not favor their own interests over those of the Class members.

81.    Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class.  Plaintiff understands that in order to provide adequate representation, he must remain informed of litigation developments and further understand that he may be called upon to testify in depositions and at trial.

82.    Plaintiff has the same interests in this matter as all other members of the Class and Plaintiff's claims are typical of the Class.

83.    There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

i.    Whether Defendants employed Plaintiff and the Class members within the meaning of the New York Labor Law;

ii.    Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiff and the Class members;

iii.    What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

iv.    Whether Defendants failed to pay Plaintiff and the Class members statutory minimum wages, in violation of the New York Labor Law and the regulations promulgated thereunder;

v.    Whether Defendants failed to pay the Plaintiff and the Class members statutory overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the New York Labor Law and the regulations promulgated thereunder;

vi.    Whether Defendants failed to pay Plaintiff and the Class members the "Spread of Hours" in violation of the New York Labor Law and the regulations promulgated thereunder;

vii.    Whether Defendants' unlawfully deducted compensation by requiring workers to pay for their own tools and supplies without reimbursement in violation of the New York Labor Law and the regulations promulgated thereunder; and

viii.    Whether Defendants are liable for all damages claimed hereunder including but

not limited to compensatory, liquidated and statutory damages, interest, costs,

attorneys' fees, and costs and disbursements.

84.    Plaintiff knows of no difficulty that will be encountered in the management of this

litigation that would preclude its maintenance as a class action.

85.    Plaintiff and others similarly situated have been substantially damaged by the

Defendants' wrongful conduct.

**FIRST CAUSE OF ACTION ON BEHALF OF THE COLLECTIVE**
**FAILURE TO PAY MINIMUM WAGE AND OVERTIME UNDER THE FLSA**

86.    Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

87.    Plaintiff brings this claim on behalf of himself and the Collective Members, and

each allegation herein is asserted on behalf of Plaintiff and the Collective Members.

88.    At all relevant times, upon information and belief, Defendants were and continue

to be an employer engaged in interstate commerce and/or the production of goods for commerce

within the meaning of the FLSA, 29 U.S.C. § 207(a).   Further, Plaintiff and the Collective

Members is a covered individual within the meaning of the FLSA, 29 U.S.C. § 207(a).

89.    At all relevant times, the Defendants employed Plaintiff and the Collective

Members within the meaning of the FLSA.

90.    Upon information and belief, at all relevant times throughout Plaintiff's

employment, Defendants had annual gross revenues in excess of $500,000.

91.    Defendant Nasab is an individual who, upon information and belief, manages

operations at For Defendants and Nasab Enterprise, and controls business decisions at Of

Defendants and Nasab Enterprise, including but not limited to, the decisions of what compensation

Plaintiff and the Collective Members would receive, and the number of hours Plaintiff was required to work.

92.    At all relevant times herein, Plaintiff and the Collective Members performed his duties for Defendants and Nasab Enterprise under the direction and control of Defendants and individual Defendant, Nasab.

93.    At all relevant times herein, Defendant Nasab had authority to make, and in fact made, decisions as to hiring, firing, and as to wages, and each acted as Plaintiff's employer as such term is used for purposes of the FLSA.

94.    Plaintiff and the Collective Members were entitled to be paid at the rate of time and one-half for his hours worked in excess of the maximum hours provided for in the FLSA.

95.    At all relevant times, the Defendants had a policy and practice of refusing to pay overtime compensation at time and one-half Plaintiff's and the Collective Members' regular rate of pay for all hours worked in excess of forty (40) hours per workweek.

96.    Plaintiff and the Collective Members did, in fact, work over forty (40) hours per week, many weeks during his employment.

97.    Plaintiff often worked fifty (60) or more hours per week; sometimes he worked up to eighty (80) hours per week.

98.    Defendants failed to pay Plaintiff overtime compensation in the lawful amount for hours worked in excess forty (40) per week.

99.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the Collective Members overtime compensation for hours worked in excess of forty (40) each week, when they knew or should have known such was due and that non-payment of such would financially injure Plaintiff.

100.    Defendants failed to make, keep, and preserve accurate records with respect to Plaintiff sufficient to determine his hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 211(c) and 215(a).

101.    Records concerning the number of hours worked by Plaintiff and the actual compensation paid to Plaintiff are in the possession and custody of the Defendants.  Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.  Defendants failed to properly disclose or apprise Plaintiff of his rights under the FLSA.

102.    As a direct and proximate result of the Defendants' willful disregard of the FLSA, Plaintiff is entitled to liquidated damages pursuant to the FLSA.

103.    Due to the intentional, willful and unlawful acts of the Defendants, Plaintiff and the Collective Members suffered damages in an amount not presently ascertainable of unpaid overtime wages, plus an equal amount as liquidated damages, and prejudgment interest thereon.

104.    Plaintiff is entitled to an award of his reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION ON BEHALF OF THE CLASS**
**FAILURE TO PAY MINIMUM WAGE AND OVERTIME UNDER NYLL**

105.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

106.    Plaintiff brings this claim on behalf of himself and the Class Members, and each allegation herein is asserted on behalf of Plaintiff and the Class Members.

107.    NYLL § 198(1)-(a) expressly provides that "any employee paid less than the wage to which he or she is entitled under the provisions of this article" is entitled to recover his or her "full wages."

108.    Plaintiff and the Class Members was entitled to be paid at the statutory rate of time and one-half for all hours worked in excess of forty (40) per workweek.

109.    Defendants failed to pay Plaintiff and the Class Members for all hours worked in excess of forty (40) per week, in direct contravention of the New York Labor Law.

110.    At all relevant times, Defendants had and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the New York Labor Law.

111.    Defendants knowingly and willfully disregarded the provisions of the New York Labor Law as evidenced by their failure to compensate Plaintiff, at the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week when they knew or should have known such was due and that non-payment of overtime compensation would financially injure Plaintiff.

112.    Due to the Defendants' New York Labor Law violations, Plaintiff and the Class Members are entitled to recover from Defendants his unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1) et al. and 198.

## THIRD CAUSE OF ACTION ON BEHALF OF THE CLASS
## <u>FAILURE TO PAY "SPREAD OF HOURS" IN VIOLATION OF NYLL</u>

113.    Plaintiff repeats and realleges each and every allegation and statement contained in preceding paragraphs of this Complaint as if fully set forth herein.

114.    At all times relevant, Plaintiff was an employee of Defendants, and Defendants have been the employer of Plaintiff within the meaning of the NYLL §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

115.    Defendants failed to pay Plaintiff and the Class Members compensation of one hour's pay at the basic minimum hourly wage rate for each day that the length of the interval between the beginning and end of their workday – including working time plus time off for meals plus intervals off duty – was greater than ten (10) hours.

116.    Defendants failed to pay spread of hours pay to Plaintiff and the Class Members in violation of 12 NYCRR §142-2.4 which states in relevant part, "An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which: (a) the spread of hours exceeds 10 hours."

117.    At all times relevant, Plaintiff regularly worked more than 10 hours per day, and Plaintiff was paid below the applicable minimum wage.  Defendants failed to pay Plaintiff the spread of hours compensation to which he was entitled under the NYLL and the supporting New York State Department of Labor Regulations.

118.    Due to the Defendants' New York Labor Law violations, Plaintiff and the Class Members are entitled to recover from Defendants her unpaid minimum wages, unpaid overtime compensation, unpaid "spread of hours" premium, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law § 663(1) et al. and § 198.

**FOURTH CAUSE OF ACTION AGAINST ON BEHALF OF THE CLASS**
**FAILURE TO PROVIDE WAGE NOTICE AND PAY STATEMENTS UNDER NYLL**

119.    Plaintiff repeats and re-alleges each and every allegation and statement contained in all preceding paragraphs of this Complaint as if fully set forth herein.

120.    Plaintiff and the Class Members were not provided with a proper, written wage notice, and not provided with annual wage notices, as required by law. NYLL § 195(1).

121.    The New York State Wage Theft Prevention Act requires every employer to notify its employees, in writing, with every payment of wages, of the dates of work covered, the rate of pay and basis thereof, hours worked, gross wages, deductions, allowances, and net wages.

122.    Defendants' failure to provide an accurate annual wage notice entitles Plaintiff and the Class Members to statutory damages of fifty dollars ($50.00) per week for each work week the violation continued to occur, to a maximum of five thousand dollars ($5,000). New York Labor Law § 198(1-b).

123.    Defendants failed to furnish Plaintiff and the Class Members with an accurate statement with every payment of wages listing gross wages, deductions and net wages, in contravention of New York Labor Law § 195(3) and 12 NYCRR § 142-2.7.

124.    Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

125.    Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records accurately showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4), and 12 NYCRR § 142-2.7.

126.     Defendants failed to comply with the notice and record keeping requirements of the New York State Wage Theft Prevention Act, and as such, are liable for civil penalties, attorneys' fees, and costs.

127.     Further, under the Wage Theft Prevention Act, employers must "furnish each employee with a statement with every payment of wages," which lists: "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages." NYLL § 195(3).

128.     An employer who fails to provide a wage statement to an employee along with his or her wages, as required by the above provision, is subject to liability of $250 per workday, not to exceed $5,000. NYLL § 198(1-d).

129.     Defendants failed to provide Plaintiff and the Class Members with the statutorily mandated accurate wage statements each time they paid him, or at any other time he was entitled to be paid timely.  Plaintiff and the Class Members are accordingly entitled to recover $250 for each day he worked for Defendants in statutory penalties, the total amount of which must be determined at trial.

130.     Plaintiff is also entitled to be compensated for reasonable costs, disbursements, and attorney's fees.

**FIFTH CAUSE OF ACTION ON BEHALF OF THE CLASS**
**ILLEGAL DEDUCTIONS IN VIOLATION OF THE NYLL**

131.     Plaintiff incorporates each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

132.    In violation of the NYLL§ 193, 12 N.Y.C.R.R. § 141-1.9, and 12 N.Y.C.R.R. § 2.10(a), Defendants unlawfully deducted wages from Plaintiff and the Class Members, by, inter alia, requiring workers to spend their own money on work-related expenses, which further reduced wages below the required minimum wage, including but not limited to, the purchase of tools of the trade and supplies to complete work mandated by Defendants.

133.    As a result of the foregoing, Plaintiff seeks judgment against Defendants on his own behalf, and on behalf of the Class Members similarly situated for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests a judgment against Defendants as follows:

A.    Declaring that the Defendants engaged in unlawful employment practices prohibited under the FLSA and NYLL;

B.    Conditionally certify the FLSA Collective and authorize notice of this lawsuit to be sent to all putative Collective Action Members;

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.    An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with it, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

E.    An award of unpaid wages and overtime compensation due under the FLSA and New York Labor Law;

29

F.      An award of liquidated damages as a result of Defendant's failure to pay wages, and overtime compensation pursuant to 29 U.S.C. § 216;

G.      An award of liquidated damages as a result of Defendants' failure to pay wages, overtime compensation and illegal deductions pursuant to the New York Labor Law;

H.      An award of compensatory and punitive damages in an amount to be determined.

I.      Statutory penalties for Defendants' failure to comply with the New York Wage Theft Prevention Act;

J.      An award of prejudgment and post-judgment interest;

K.      An award of costs and expenses of this action with reasonable attorneys' fees; and Such other and different relief as this Court determines to be just and proper under the circumstances.

L.      Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering and injury to reputation against Defendants, or any jointly or severally liable entity or person;

M.      Awarding Plaintiff all damages sustained as a direct and proximate result of Defendants' breaches of any agreements and/or otherwise unlawful conduct alleged herein;

N.      Awarding Plaintiff Punitive Damages;

O.      Awarding Plaintiff all interest, attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

P.      Awarding Plaintiff such other and further relief as the Court may deem equitable. just and proper.

## **JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

Dated:  May 6, 2025
        White Plains, New York

                              Yours, etc.

                              VALIANT LAW

                              By:  ___s/ Joseph Jeziorkowski___
                                   Joseph Jeziorkowski, Esq.
                                   Daniel Folchetti, Esq.
                                   *Attorneys for Plaintiff*
                                   *Geure Rodriguez*
                                   2 Westchester Park Dr., Suite 205
                                   White Plains, New York 10604
                                   914-730-2422
                                   jjj@valiantlaw.com
                                   dcf@valiantlaw.com

**CONSENTIMIENTO PARA DEMANDAR BAJO**
**LA LEY DE NORMAS LABORALES JUSTAS**

**RE: Geure Rodriguez** *v. Lulav Properties, LLC, Lulav Management Corp., and Kourosh*
*Nasab a/k/a Kenny Nasab a/k/a Ken Nasab*

Yo, Geure Rodriguez, soy un individuo anteriormente empleado por Lulav Properties,

LLC. Doy mi consentimiento para ser el demandante en la acción antes mencionada para cobrar

salarios no pagados y compensación por horas extras y otros daños.

Dated: May 2, 2025
        White Plains, New York

_____
        Geure Rodriguez